The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. All right, good morning, Counsel. We're on the record in 4-23-0740, People v. Jotarius Jordan. Counsel, could we have your appearances first for the appellant? Yes, I'm Zachary Wallace from the Office of the State Appellate Defender on behalf of the appellant, Jotarius Jordan. Thank you. And for the appellee? Adam Trejo on behalf of the People of the State of Illinois. Thank you. Mr. Wallace, you may proceed with your argument. Thank you. Good afternoon, Your Honors, Counsel, and may it please the Court. Again, my name is Zachary Wallace from the Office of the State Appellate Defender, and I'm appearing on behalf of the defendant, Appellant Jotarius Jordan. Your Honors, in this case, the trial court erred where, after Mr. Jordan made a preliminary showing that his sanity at the time of the offense would likely be a significant factor at trial, the court refused to appoint a psychiatrist to examine Jordan and render an opinion as to Jordan's mental condition at the time the offense occurred. It's well established that when a criminal defendant makes a preliminary showing that his sanity at the time of the offense will be a significant issue at trial, the state must assure his access to a competent psychiatrist. And here, Mr. Jordan made this preliminary showing and should have been afforded the opportunity to explore this potential defense. Shortly after being appointed to represent Mr. Jordan, his initial trial attorney filed a motion requesting that a psychiatrist be appointed to conduct a psychological examination of Jordan to render an opinion regarding both his fitness to stand trial and his sanity at the time of the offense. Counsel explained that Jordan had exhibited behaviors which raised a concern about his mental condition at the time of the offense and his fitness to stand trial. And specifically, in regard to the sanity portion of the motion, counsel explained that he had this bona fide doubt of Jordan's mental condition at the time of the offense based on his review of discovery materials and Jordan's explanation concerning the events surrounding the case. After Mr. Jordan's attorney made this request for psychological examination, Mr. Jordan exhibited bizarre and extreme behaviors while in the county jail and throughout all of his court proceedings, which further supported counsel's initial belief that his sanity at the time of the offense would be a significant issue at trial. During the pendency of this case, Mr. Jordan received over 24 disciplinary violations while in the county jail, and he was so disruptive in court that he was actually removed from nearly every pretrial court proceeding. He was confrontational with the judge and everyone he interacted with and even physically attacked his defense attorney before proceeding pro se. Mr. Jordan displayed such threatening behavior that he was placed in leg shackles during trial and was in full restraints immediately before the jury announced his verdict. And I think what's very telling of how abnormal Mr. Jordan's pretrial behavior was, was that the initial trial judge in this case, Judge Lyons, described Mr. Jordan as being intolerable, believed he had alienated himself from decent humanity, thought that most of the first world would struggle to get along with Mr. Jordan, and compared Jordan's behavior to that depicted in the film The Silence of the Lambs. In addition, So let's let's talk, though, about what insanity in the context of being not responsible for the crime. Doesn't that involve some degree of inability, some moral insight that's lacking, some inability to know right from wrong? And while he's had bizarre and strange behaviors, there's really nothing in the record to suggest anything along those lines. Isn't that true? Well, Your Honor, it's true that insanity does deal with a situation where there was the defendant lacked a substantial capacity or there's something in preventing him from understanding or appreciating the criminality of his conduct. However, there is some, at least initially, evidence that does at least support making this preliminary showing. Mr. Jordan, in his police interview, when he was essentially confessing to the offense, he did indicate that prior to the offense, he became he was very angry. He was losing control. He indicated that he blanked out, didn't mean to do it. Just kind of pulled the trigger when he shot the victim. And additionally, Mr. Jordan's attorney did indicate in the motion that he had this doubt as to Mr. Jordan's sanity at the time of the offense based on his review of discovery materials. And this was at the outset of the case. Presumably, that would be the discovery materials surrounding the offense and his communications with Mr. Jordan regarding the offense. And additionally, it's important to note that at this stage, Mr. Jordan does not need to show that an insanity defense would ultimately prevail at trial. Understood, but I still think we can't just look for signs of mental illness or bizarre behavior. We have to have some reason to think that he has really this has an argument that there is this minimal level of his ability to make moral judgment that is above him. Correct. And I think the case of People v. Kegley is somewhat instructive in that matter, because in that case, the defendant was arrested and leading up to trial. He had some mental health issues, but defense counsel in that case requested a psychiatric examination for an opinion as to sanity because counsel had a concern that that could be a significant issue at trial. The trial court in that case denied the examination and the appellate court reversed. And in reversing this denial, the appellate court found that a preliminary showing was made and pointed to the defendant in that case's irrational behavior after the offense when he was in custody. The fact that the defendant had become an intense religionist in the time leading up to trial, the defendant's comments at trial to his attorney expressing suicidal desires, and also that the defendant had some previous hospitalizations for mental health and substance abuse issues. And in this case, Mr. Jordan's post-defense behavior is certainly extreme and abnormal. And there is some evidence of a mental health issue here. I think he termed it trust issues. Yes, well, trust issues, but Mr. Jordan also did indicate that he did feel paranoid all of the time. He revealed he was in mental health counseling for nearly a decade as a child. He grew up in foster care. The PSI report revealed that he was in special education classes during his time in school, was in behavioral problem classes, and was removed from several youth programs due to behavioral issues. So there is some evidence suggesting that there is a mental health issue here. And importantly, it's important to remember that Mr. Jordan or Mr. Jordan's attorney is not necessarily qualified to make these findings regarding exactly what mental health issue is here or make a diagnosis. That would be the job of the psychiatrist, and that's why Mr. Jordan only needs to make this preliminary showing in order to be afforded the opportunity to explore this defense. And, again, as I discussed, Mr. Jordan did express extreme and abnormal behavior, but additionally, there was other evidence in the record that suggested that sanity could be a significant factor at trial. It was the childhood trauma Mr. Jordan faced regarding foster care. DCFS took custody of him at seven years old. He was in counseling for eight years as an adolescent. He was in special education classes throughout school. I believe he attended school up to the 11th grade. Additionally, I think it's important to note that in Mr. Jordan's police interview, he does indicate that he lost control and blanked out. And I think Mr. Jordan's conduct in the time leading up to trial does display some support for this notion that he clearly struggles to control himself or lose control. And, again, without the assistance of a psychiatrist, it's difficult to exactly ascertain what that is, but it is a suggestion that sanity could be a significant issue. And, again, defense counsel, before being physically attacked and removing from the case, did indicate to the court that there was a real concern here regarding Mr. Jordan's sanity at the time of the offense. Additionally, the state dedicates most of its argument to the notion that Mr. Jordan is required to give notice that he will be raising an insanity defense in order to be entitled access to a psychiatrist. And to the extent that notice is required in this case, Mr. Jordan's defense attorney provided ample notice in the motion that insanity defense could potentially be raised in this case. And Mr. Jordan by no means is required to formally assert the defense of insanity in order to be entitled an expert witness to learn if the defense is even viable. No case supports the notion that a defendant must commit to raising this defense before being entitled to an examination to learn if the defense is even viable. And it also would defy common sense. The case of Schultz v. Page, the appellate court below noted that defense counsel didn't file this notice of raising an affirmative defense and denied the pretrial request for a psychological examination. And the Seventh Circuit in that case rejected that claim, specifically stating that it would be difficult to understand how a defendant would be able to raise this defense without first having an examination to determine its viability or if it's possible. Additionally, the state cites the statute 725 ILCS 5-115-6 in support of its claim that Mr. Jordan failed to give notice in this case. But there's a few important things to note regarding that statute. And first, it would be that 115-6 involves the state's right to have a defendant evaluated by a psychiatrist. The statute does not necessarily have much relevance to the constitutional claim raised in this appeal. That statute establishes the procedures in a criminal proceeding with respect to a court-ordered psychiatric examination on the people's motion when it appears a defendant may raise the affirmative defense of insanity. And additionally, to the extent the statute has any relevance, again, it would be Mr. Jordan's position that he made the sufficient notice that he may raise this defense through the filing of the initial motion. And additionally, the third basis in that statute for being entitled to this exam is if the facts and circumstances of the case reasonably justify a belief that insanity may be pled. And again, for the reasons that Mr. Jordan made this preliminary showing, that would be a reasonable belief. Just based on defense counsel's initial request, Jordan's extreme and abnormal behavior, coupled with his statements to police and his history of childhood trauma, that would be enough to have a reasonable basis that insanity could be pled. Mr. Wallace, do you accept that we are to apply the abuse of discretion standard? Yes, I believe that the trial court's denial of Mr. Jordan's motion or initial request would be reviewed for an abuse of discretion. And when we apply that standard, we are to determine whether it's a decision that no reasonable person would agree with. And given that amount of discretion that we're to apply to the trial court's decision, what is it that just stands out as so jarring about the trial judge's determination that there should be no examination, psychological examination here? What is it that just stands out here? Yes, well, what stands out initially is that in this case that Mr. Jordan is not asking for prior trial this substantial amount of relief. Mr. Jordan is asking for an initial examination so that he can determine if an insanity defense is viable. What stands out in this case is that the trial judge recognized and acknowledged that Mr. Jordan's behavior was extreme and abnormal. The trial judge indicated he's similar to science of the lands, that he's intolerable, alienating himself from decent humanity. Mr. Jordan clearly is expressing mental health issues or that he has issues that sanity could be an issue. And here what's particularly outstanding or notable about the trial court's denial is that the trial court denies this, indicating that he believes Mr. Jordan has intentionally or purposely made this blurry and ought not be rewarded. And the trial court is essentially reviewing this request as if it's a reward for Mr. Jordan to be entitled to his constitutional right of due process. Mr. Jordan didn't make the initial request. Counsel, another way to read that is that there's some degree of intentionality in your client's conduct is essentially that it may not all be what it seems to be on the surface and it may be intended to support this defense. Correct, but that's also a fair reading of the comment. But it still remains that the trial judge did indicate that it ought not be rewarded. And it's important to note that regarding sanity, Mr. Jordan's trial attorney filed this motion requesting it based on his initial interactions with Mr. Jordan. Mr. Jordan did not. It was not Mr. Jordan's initial motion. There's no indication that Mr. Jordan really benefits in any way as far as a reward by having a psychiatric examination. The examination would be limited to the purposes of whether this affirmative defense is available. It's different from fitness in the sense that the result of the examination wouldn't stay the trial necessarily. It would not necessarily be a delay tactic. At the time the motion was denied, it was still a significant amount of time before the trial occurred. So I think what stands out here is that ultimately Mr. Jordan is making a basic base level request for just an initial examination. If Mr. Jordan was not indigent, he likely would have retained a psychiatrist on his own. The only reason Mr. Jordan was not allowed the opportunity to explore this defense is because he could not afford the psychiatrist. And that's why, pursuant to ACT v. Oklahoma, Mr. Jordan is entitled to this expert witness when he shows that his sanity could be a significant factor at trial. And for the reasons discussed earlier, Mr. Jordan has shown that his sanity would likely be a significant factor at trial and should have been given this initial request. If your honors have no further questions. Mr. Wallace, I have a question. What is your best case which sets forth an example of a conduct which would constitute a preliminary showing entitling a person claiming insanity to an examination? Yes, so I believe I know I cited a few cases in the briefs, largely People v. Kegley and Schultz v. Page. I think the best case showing when a person is entitled to it is probably People v. Kegley because there, in that case, I believe there was no actual defense counsel wanted to present witnesses and additional evidence in addition to this motion before trial for this psychiatric examination. I know the trial court denied that. And there, the appellate court looked at the record as a whole and found that there was a preliminary showing here based on just all of the defendant's behavior and statements that he should have been given this examination. And I think that's a comparable situation here where you have the initial motion request and then looking at the record as a whole. Again, it's not necessarily that a sanity defense would have prevailed. We don't know that without an examination. But there is ample evidence in the record that shows that sanity would likely have been a significant factor at trial and should have at least been explored. So I would say People v. Kegley to the extent between Schultz and Page. Okay, thank you. Yes, there are no further questions. Because Mr. Jordan made a preliminary showing that his sanity at the time of the offense would be a significant factor at trial, the trial court erred in denying his pre-trial request for the appointment of an expert. And therefore, this court should reverse Mr. Jordan's conviction and remand for psychological examination and new trial. Thank you. All right. Thank you, Mr. Trejo. You may proceed. May it please the court, Counsel Adam Trejo, on behalf of the people of the state of Illinois. The state would like to first point out that the filing of a motion for a psychiatric examination is not a per se entitlement to one like the defendant is treating it on appeal. As the defendant acknowledges, the defendant must make a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial. In other words, a defendant is not entitled to an expert merely because that expert is useful, helpful, valuable, or important to the defense. The defendant must show to make a preliminary showing that it is necessary to prove a crucial issue. And that threshold has not been shown here. I'd like to point to the defense counsel's motion that was filed in this case. It was a brief two-page motion. Within that motion, defense counsel Toner, before he was allowed to withdraw, alleged that the defendant exhibited behaviors which raised concerns regarding his mental condition. However, defense counsel didn't identify those behaviors. They're very conclusory allegations. On appeal and within this argument, the defendant identifies information from the PSI, which allegedly supports his argument, but that's not alleged within the motion. The trial court is not required to respond to grant a motion that lacks specificity, lacks information regarding any issues the defendant may have had at the time of the offense. Opposing counsel made a statement that he had reviewed discovery, which led him to file this motion. But what is that discovery? What is within that discovery that led counsel to file this motion? It's not within the motion. Mr. Trejo, would you agree, do you agree with appellant that case law allows for the trial court to consider the defendant's in-court behavior in making a determination as to whether or not a psychological examination to evaluate sanity at the time of the offense should be ordered? That is a component and part of the equation, but there's other factors missing from the equation. The state posits that hostility and anger by itself is insufficient to show that an individual's mental state, whether in the past or present, prevents you from understanding or appreciating the consequences of your actions. I'm sorry for interrupting. On that point, when counsel was arguing, he referred to it as bizarre behavior. You referred to it as hostility and anger. In terms of the behavior that was exhibited in the courtroom, was there behavior that went beyond anger, frustration, aggression, that went beyond that and would be considered bizarre in some other way? No, it's purely aggression. The defendant attacking his attorney, aggression, anger, hostility. There's nothing else linking. And again, I'd like to point out that the examples that opposing counsel mentions regarding the defendant's behavior happened after the motion. None of these instances were alleged within the motion. Again, the trial court is not required to sua sponte, grant a motion that lacks specificity. If the defendant's conduct during the trial proceedings were an issue, it should have been alleged within the motion. Defendant is reading a lot of information and a lot of facts within the motion that is just not there. And the state would like to point out that there is a possibility that there was no ruling made on this motion. The day that defense counsel, the attorney who filed the motion, was allowed to withdraw before the court could conduct a hearing on the motion and rule on it. The trial court did make a statement saying at the end of the hearing, in which it allowed counsel to withdraw, that defendant had no basis for examination. However, at a post-trial hearing, the defendant's attorney conceded that there was no hearing on this motion. In essence, no ruling after counsel was allowed to withdraw and the motion not being heard. Despite the language that you're construing as a concession, talking about the subject matter of this motion and you're saying there's not a basis for it, how do we say that's not a ruling on the motion? The trial court statement? The trial court statement. It could be interpreted as a ruling on it, but you have to square with the fact that the defendant represented himself at trial and he never re-raised that motion. He filed numerous motions. There's nothing in the record to indicate that the defendant himself wanted to present that defense. You have to square that with the fact that he testified at trial that I did not shoot the victim. It was an individual who bought weed that shot her. So you have on appeal an argument indicating that the defendant wanted to present this insanity defense when his actions show the opposite. He could have made the argument that he could have attempted to re-raise that motion, which he did not. He could have argued an insanity defense. Nothing in the record shows that he wanted to present that defense, and it goes within the notion that no notice was provided that an insanity defense would be a critical issue at trial. Counsel, in terms of the notice under the statute, if he gives that notice as part of getting the examination, and then he gets an examination that doesn't support the insanity defense, he still opened the door to the examination by the state's psychiatrist, where statements he makes may be admissible against him. That's really putting him to a heck of a choice there, isn't it, to put his chips into that game before knowing whether he has the hand? No, it's not the state's position that the defendant has to commit prior to trial to a defense. Only that your request for an examination is required to explore this defense. Again, the language was may. The defendant needs to provide notice that a defense may be used within your defense to help prove a critical issue in the case. Again, the defendant does not have to. On motion of the state order the defendant to submit to an examination by the state's psychiatrist. So, that is correct, but hard to come back from that right if he makes that election. But even before we get there, within them, you need to make a preliminary showing. And there is no preliminary showing in the motion filed by defense counsel other than a broad statement lacks complete facts. Again, the standard is abuse of discretion. And here we have a motion that does not allege the aggressive conduct, does not allege conduct regarding the defendant's actions at the time of the offense. The PSI didn't show that the defendant had been hospitalized, had been institutionalized in a mental institution. It didn't show that he was on medication that he was required to take at the time of the offense. Based on this record, there's nothing showing that the defendant didn't appreciate the consequences of his actions. And, keyly, the case cited by the defendant within his brief is on point, but on point for the state, not for the defendant. In that case, the defendant's attorney did file the motion and included attachments to the motion, which showed that there were issues with the defendant's ability to appreciate his conduct, which included mental hospitalization and also included issues concerning his substance abuse. There, the defendant provided support for the motion. That is a showing, that's a clear-placed example of a defendant making a preliminary showing. The state was unable to, in its research, uncover a case where the defendant's hostility alone is enough to show a preliminary showing and, therefore, have access to a psychiatric examination. So, in summary, this is not an abuse of discretion, given what was presented to the court and based on the record as a whole. Absent any further questions, the people of the state of Illinois respectfully request that this honorable court affirm defendant's conviction for first-degree murder. Counsel, is the state's position that the showing must include some evidence of substance abuse and or former mental health hospitalization? Not those specific examples, but you must allege facts. For example, it doesn't have to be being institutionalized, but that can be. It could be, for example, the defendant was not on medication at the time of the offense, which would show that he did not appreciate his conduct at the time of the offense. So, the examples that you provided in your question, yes, that can support a defendant's motion to overcome the threshold to establish a preliminary showing. That's an example, but it's not the only example. My question was not intended to give you examples. My question was to have you say on behalf of the state whether those two conditions, the substance abuse and or mental health hospitalization or treatment, are necessary in order for a person to establish the preliminary showing. There are facts that can show a preliminary showing. It doesn't happen in every case. Other facts can show the preliminary showing, such as the defendant was not on medication. Yes, there could be other facts that support a preliminary showing, such as the fact that the defendant is on medication and that he wasn't on that medication at the time of the offense. That's another example that you could allege in your motion to make that threshold. Okay, so it sounds like then there has to be substance abuse, failure to take medication, or some kind of mental health hospitalization or treatment in order for a person to make a preliminary showing. Is that right? Is that the state's position? Again, it's an equation, and those are factors that lead to that equation. Again, it's also, again, it needs to be conduct. You need to let facts that establish conduct that the defendant did not appreciate the circumstances that occurred at the time of the offense. So any information that supports that is necessary to make a preliminary showing. Okay, but just to conclude here, hostility and anger are never enough, right, according to the state? On this record, no. On the facts and how he exhibited himself within the court, no, it is not. It is part of an equation, but alone it is not. Okay, thank you. All right, thank you, Mr. Trejo. Mr. Wallace, rebuttal argument? Thank you. To briefly touch on Justice Turner's last point, I think it's important to note that the cases that have been cited, Kegley, Schultz v. Page, even the initial case which established this, Act v. Oklahoma, none of these cases are espousing an exhaustive list of what you need to show to make a preliminary showing. Admittedly, there's not a lot of case law on the issue of what constitutes a preliminary showing. Now, whether that's because the initial psychiatric examination is usually granted in trial, I don't know, or maybe this is not a request that commonly is made. But the fact remains, there's not a lot of case law, and by no means is there an exhaustive list that says, you know, a defendant must be on psychotropic medication or must do this or must do this. Instead, you have to make this preliminary showing. And I think the discussion regarding anger and hostility of the defendant's actions actually illustrates how a psychiatrist is particularly necessary in these cases, because to several, looking at Mr. Jordan's behavior, without the assistance of being a licensed psychiatrist and seeing this before, it could present as he's angry. It could present as he's hostile or aggressive. But to a psychiatrist, this behavior could be indicative of an antisocial disorder. It could be indicative of a bipolar disorder. We don't know. And that's why, in order to be able to raise this defense or at least explore if it's viable, a defendant's entitled to this examination. Because, again, the state's point is well taken regarding what's necessary to show that you're insane at the time of the offense. I don't think Mr. Jordan doesn't dispute the standards of an insanity defense at trial or what needs to be shown to succeed at trial on this defense. But that's not the issue in this case. Mr. Jordan was not able to raise insanity at trial. Mr. Jordan merely… But there's also no indication that Mr. Jordan, pro se, wanted to raise insanity at trial. Well, I think it's important to look at the context of this, though. Mr. Jordan's initial attorney requests this examination. The initial trial judge, because there was two trial judges. Judge Lyons was the first one. Judge Asbury was second. The initial trial judge denies this motion for… I believe his word was there's no basis for diminished capacity on insanity at the time of the offense. No examinations being made. So this request is denied. After that, Mr. Jordan doesn't renew the motion that was just denied. But Mr. Jordan filed several pro se motions asking for a psychological examination in regards to his mental state at the time of the hearing or at the time of his police interview. So Mr. Jordan is not necessarily presenting himself to the court as an entirely sane. He was saying he was completely mentally stable throughout all of this. I don't think Mr. Jordan is saying that he absolutely was sane. I think Mr. Jordan just doesn't renew a motion that was previously denied. But he still does file a pro se motion regarding his mental status. So do we not need to look at the basis for the motion that's reflected in the motion and facts known by the trial court as of the time it ruled in the motion? It seems like it wouldn't be appropriate to look at information from later to find the judge acted outside his reasonable discretion earlier. Yes, well, I believe at Judge Lyon's initial ruling, looking at the facts leading up to the time of his initial ruling, I believe there's enough there to make this preliminary showing. And in defense counsel's initial motion, it's true that he doesn't identify Mr. Jordan's behaviors in the time leading up to the denial of the motion. But that's because the motion was filed before the behavior occurred. And in People v. Kegley, the trial court had a real issue. That's a problem. But that's a problem because that what the judge is asked to rule on is what's present at the time he's ruling. Correct. But at the time that he denied the motion, Mr. Jordan had already behaved in such a way that the judge compared his behavior to silence of the lamb, said that he was intolerable. Mr. Jordan had already been disruptive, had already been in isolation in the jail, had already physically attacked his attorney at the county jail. All of this behavior happened in a time before the motion was denied. In fact, the trial judge before denying the motion had inquired into Mr. Jordan's fitness. And that's when Mr. Jordan revealed that he felt paranoid all of the time, that he was in counseling for nearly a decade, that he was grew up in foster care. That's where he revealed this childhood trauma. So it's correct that it would not necessarily be fair to hold the initial judge, Judge Lyons, to knowing information that was not presented at the time he ruled the motion. But most of this behavior was already displayed and exhibited at the time that the motion was initially denied. And then I see I'm out of time. So if your honors have no further questions, again, we were just asked that this court reverse Mr. Jordan's conviction and remand for psychological examination and new trial. Thank you. Thank you, Mr. Wallace. Thank you both. The case will be taken under advisement. The court will issue a written decision. The court stands in recess.